UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PETER HUBBARD,

        Plaintiff,

  - against -

JAMES HANLEY, COMMMISIONER OF NEW
YORK CITY OFFICE OF LABOR RELATIONS;
JOHN MATTINGLY, COMMISSIONER OF NEW
YORK CITY ADMINISTRATION FOR
CHILDREN'S SERVICES; and the CITY OF
NEW YORK,

        Defendants.

------------------------------------------------------------------------x

09 CV 10265 (HB)

OPINION &
ORDER

**Hon. Harold Baer, Jr., District Judge:**

  Plaintiff Peter Hubbard ("Plaintiff" or "Hubbard") is an employee of the New York City Administration for Children's Services (the "ACS"), who received a 20-day suspension without pay for two incidents with other ACS employees. Hubbard claims that the disciplinary hearing process, where he received both pre- and post-discipline hearings, violated his Constitutional rights to procedural and substantive due process under the Fourteenth Amendment. He also claims that he was discriminated against in violation of his Fourteenth Amendment right to equal protection, and in violation of his First Amendment right to free speech. Defendants moved to dismiss for failure to state a claim. For the reasons that follow, Plaintiff's claims are DISMISSED.

### I. FACTUAL BACKGROUND[1]

  Plaintiff is employed as a Community Coordinator for the ACS, an agency of the City of New York. In late 2008, Hubbard was brought up on disciplinary charges for two instances of improper conduct. On September 10, 2008, Plaintiff received a formal notice of "Charges and

---

[1] The following facts are taken from Plaintiff's Complaint, the factual allegations of which are accepted as true for purposes of Defendants' motion to dismiss, as well as from documents attached to the Complaint and incorporated by reference.

1

Specifications," for a series of verbal altercations with an ACS Child Protective Specialist ("CPS") and an ACS attorney.  *See* Compl., "Book of Exhibits," at 1-2 (Charges and Specifications, ACS File No. 66051-542-001) (hereafter "Charge #1").  On August 1, 2008, the CPS contacted Plaintiff to determine the status of a bed delivery to the home of a child's grandmother, which was court-ordered to be provided by August 4.  According to the notice, Hubbard said that the bed would be delivered sometime that week, but would not confirm it would arrive by August 4 despite the court order; the bed ultimately did not arrive by that date.  On August 6, 2008, an ACS attorney contacted Plaintiff about the bed delivery issue, whereupon Hubbard allegedly yelled at the attorney, called her names like "Missy," refused to provide a telephone number or refer the call to his supervisor and ultimately claimed that he was the supervisor.  Hubbard was charged with violations of the ACS Code of Conduct, specifically (1) offensive or inappropriate language and a failure to be courteous and considerate; (2) failure to perform duties, tasks and standards of employment and imposed by law; (3) conduct prejudicial to good order; and (4) conduct detrimental to the ACS.

On December 11, 2008, Hubbard received a second notice for a different incident with his fellow ACS employees.  *See* Compl., "Book of Exhibits," at 16-17 (Charges and Specifications, ACS File No. 66051-542-002) (hereafter "Charge #2").  According to the notice, on or about November 14, 2008, Hubbard got into a verbal altercation with another Child Protective Specialist, as well as a Specialist Supervisor, where he yelled at both individuals, asked whether the CPS was "stupid or just slow," and told the Supervisor that he "run[s] the show down here."  *Id*.  Plaintiff was charged with (1) offensive or inappropriate language and a failure to be courteous and considerate; (2) conduct prejudicial to good order; and, (3) conduct detrimental to the ACS.

Plaintiff engaged in a pre- and post-discipline hearing process for both sets of charges.  On September 23, 2008, Hubbard participated in a pre-discipline informal hearing for Charge #1.  On November 13, 2008, Plaintiff received the informal hearing decision, which sustained the charges and recommended a ten-day suspension without pay.  He also received on that same day a waiver letter that gave Hubbard the option of either proceeding with a Disciplinary Hearing pursuant to Section 75 of the New York State Civil Service Law, or waiving the Section 75 hearing in favor of a union-based Grievance Procedure established by the Plaintiff's union collective bargaining agreement ("CBA").  Hubbard signed the waiver and opted for the

Grievance Procedure. On December 1, 2008, a "Step II" hearing was held pursuant to the Grievance Procedure to review the proposed discipline, and on January 21, 2009, the hearing officer sustained the suspension. On December 19, 2008, a pre-discipline informal hearing was held for Charge #2; Hubbard received notice on December 30 that these charges were sustained, and another ten-day suspension without pay was recommended. Again, Plaintiff opted to participate in the Grievance Procedure instead of a Section 75 hearing.[2] On January 12, 2009, a "Step II" hearing was held for Charge #2, and on January 22, the hearing officer sustained the proposed suspension. On January 29, 2009, the Commissioner for the ACS accepted the recommendation of the Step II hearing officers for both Charge #1 and #2, and suspended Hubbard for a combined twenty days without pay, beginning on February 9, 2009. On June 18, 2009, Plaintiff participated in a post-disciplinary "Step III" hearing for both sets of charges. Hubbard was notified on July 28, 2009 that there was no violation of the Grievance Procedure and the suspension was upheld. Hubbard could have further appealed to a "Step IV" arbitration proceeding, but it is unclear from the complaint and attached documents whether he ever opted to do so.

      Hubbard now brings suit against the City of New York, James Hanley, Commissioner for the Mayor's Office of Labor Relations for City of New York, and John Mattingly, Commissioner for the Administration for Children's Services (collectively "Defendants"). Plaintiff claims that the disciplinary process was flawed and in violation of his procedural due process rights under the Constitution because there were no live witnesses and he therefore could not confront his accusers. He also claims that he was suspended based on protected speech in violation of the First Amendment. Finally, Hubbard also claims that the process was a violation of his substantive due process rights as well as a violation of his right to equal protection. Defendants move to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) Plaintiff fails to adequately allege violations of due process, equal protection, or free speech; (2) the individual defendants are shielded by qualified immunity and lack personal involvement; and (3) the violations are not alleged to be a custom, policy, or practice of the City of New York.

---

[2] Only an unsigned waiver letter was attached to the Complaint for Charge #2. However, Plaintiff conceded that he waived his right to a Section 75 hearing and otherwise does not raise it as an issue, *see* Pl's Mem. of Law in Opp. to Def.'s Mot. to Dismiss, at 1, and the waiver is also apparent from his participation in the Grievance Procedure.

## II.   DISCUSSION

### A.   Legal Standard

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P.12(b)(6).  To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief."  *Id.* at 1950.  A court must accept as true all of the factual allegations in the plaintiff's complaint, *see, e.g., Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009), and may consider "undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint," *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008) (internal citations and quotations omitted).  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that "some person has deprived him of a federal right" and "the person who has deprived him of that right acted under color of state law."[3]  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).  I need not consider whether Defendants acted under "color of state law" because Plaintiff fails to adequately allege any actionable deprivation of constitutional rights.

### B.   Procedural Due Process

The Fourteenth Amendment protects a person from deprivation of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1; *see also Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  A court should examine a procedural due process claim in two steps: "the first asks whether there exists a liberty or property interest which has been interfered

---

[3] Plaintiff's amateurish complaint only makes reference to 42 U.S.C. § 1983 with regard to his equal protection claim.  Although relief may at times be derived directly from the Constitution, "when § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available."  *Lehman v. Doe*, 66 Fed.Appx. 253, 255 (2d Cir. 2003) (citing *Pauk v. Bd. of Trustees of City Univ. of New York,* 654 F.2d 856, 865 (2d Cir.1981)).  Since § 1983 provides a cause of action for claims based on violations of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment, *see Collins v. City of Harker Heights*, 503 U.S. 115, 119-120 (1992), I will construe Plaintiff's Complaint as seeking all his constitutional relief pursuant to that statute.

with by the State … the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). There is little question at this stage that Plaintiff has a constitutionally protected property interest in his employment with the City of New York. "[A] public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge," *Harhay* 323 F.3d 206, 212 (2d Cir. 2003), and the suspension without pay of a tenured employee likewise implicates a protected property interest. *See O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005) (citing *Narumanchi v. Bd. of Trustees of the Ct. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)). Unfortunately for Plaintiff, he fails to demonstrate how the procedures that led to his suspension violated due process under the Constitution.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In the context of a public employee, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards."[4] *LoCurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985)). In some instances, of course, the government may be unable to hold a pre-deprivation hearing. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981) ("the impracticability in some cases of providing any pre-seizure hearing under a state-authorized procedure"). Where a deprivation of property or liberty is due to a "random and unauthorized" act of government as opposed to an established state procedure, there is no procedural due process violation if the government provides a meaningful post-deprivation remedy. *LoCurto*, 264 F.3d at 172.

Plaintiff contends that his due process rights were violated because he was not provided the opportunity to confront live witnesses at any of his pre- or post-deprivation hearings. The requirements for a pre-deprivation hearing are limited and, based on the facts alleged, were satisfied in this case. The requisite hearing "is a minimal one" and "need not be elaborate." *LoCurto*, 264 F.3d at 173; *Loudermill*, 470 U.S. at 545. The Supreme Court has clearly stated

---

[4] Most of the case law discusses due process in the context of employment termination. However, as noted, *infra*, this Circuit has determined that suspension without pay is a similarly protected property interest. *See O'Connor*, 426 F.3d at 197. As such, the legal analysis for due process in termination hearings is equally applicable to hearings that result in a suspension without pay. *See id.*

that, prior to discipline, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546; *see also O'Connor*, 426 F.3d at 198 ("Because pre-deprivation process serves a limited function, the Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond.").

In the case at bar, Plaintiff was provided formal notice of the charges that included a detailed description of the incidents, and was involved in two separate hearings before he was suspended. At the Step II hearing, Hubbard was given the "opportunity to present his side of the story," as the record indicates a fairly detailed rebuttal of the charges by Plaintiff, complete with supporting documentary evidence. *See* Compl., "Book of Exhibits," at 6-10, 20-22 (Step II Hearing Decision Letters). Hubbard's claim that Defendants were also obligated to provide live witnesses for him to confront and cross-examine is unavailing. The law requires little more than notice and an opportunity to be heard as "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545-46 (also holding that due process is satisfied by "oral **or written** notice") (emphasis added); *see also O'Connor*, 426 F.3d at 198.

What demonstrates that Hubbard's claim must fail as a matter of law, however, is that he affirmatively waived his right to a full adversarial hearing in favor of the CBA-mandated grievance process. *See Gansas v. City of New York*, No. 05 Civ. 5484, 2006 WL 2166869, at *7 (E.D.N.Y. July 31, 2006), *aff'd*, 240 Fed. Appx. 435 (2d Cir. 2007). In *Gansas*, the plaintiff, a City of New York employee, received the same notice of charges and letter that provided the opportunity to waive a Civil Service Law Disciplinary Hearing in favor of a the CBA Grievance Procedure. In this case, as well as in *Gansas*, the letter clearly stated in bold font that a waiver to such a hearing was "FINAL, IRREVOCABLE AND BINDING." *See* Compl., "Book of Exhibits," at 4. Understanding that to "afford" a party a full adversarial hearing means to make one available, the court determined that "[i]n the final analysis, it is the *opportunity* for an adversarial hearing or equivalent grievance procedure, whether or not the terminated employee actually avails himself of such processes, that satisfies the City's constitutional obligations." *Gansas*, 2006 WL 2166869, at *7. The Second Circuit confirmed this holding, and quoted the district court's logical conclusion that "to hold otherwise would allow the nonsensical result that

terminated employee, offered an adversarial hearing or the equivalent grievance procedure, could waive his right to a hearing, abandon his efforts at arbitration, and then file a claim against the City for a due process violation." *Gansas*, 240 Fed. Appx. at 438. This case presents us with virtually the same situation. Hubbard was given adequate process at his pre-discipline hearings, affirmatively waived his right to a full adversarial hearing in favor of the grievance process, and ultimately may not even have taken advantage of the final arbitration hearing offered by this alternative process[5]. As such, his procedural due process claim must be dismissed.[6]

### C. Substantive Due Process

Plaintiff also alleges that the hearing process violated his substantive due process rights. To survive a motion to dismiss, a substantive due process claim "must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez*, 401 F.3d at 93. There is "no calibrated yard stick" for this determination, *see id.*, but the facts here don't come close to meeting the "shocks the conscience" standard, and in any event is subsumed by his other constitutional claims. "Where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Id.* Plaintiff's only factual allegations are with regard to the claimed violation of the hearing process or his right to free speech. As was the case in *Velez*, here "[w]hat is allegedly shocking about what the defendants' did is either their intent to violate [Hubbard's] fundamental First Amendment rights, or their motive to deprive [him] of [property] without procedural due process." *Id.* Hubbard's substantive due process claim is at best redundant and subsumed in his other claims, and must be dismissed. *See id.*

### D. First Amendment

Plaintiff also claims that he was suspended for exercising his right to free speech. The First Amendment protects employees from retaliation by their employer based on the content of protected speech. *See LoCurto*, 264 F.3d at 166. To make out a claim, Plaintiff must show (1)

---

[5] While Hubbard complains about the Step III hearing, it is not clear if he ever went to the Step IV arbitration where he would enjoy further procedural protections.

[6] To the extent that Plaintiff alleges that the violations were "random and unauthorized" instead of the result of established state procedures, the waived opportunity for a full adversarial hearing is likewise sufficient to protect his due process interests. *See LoCurto*, 264 F.3d at 172.

7

what was said constituted speech "on a matter of public concern;" (2) he suffered an adverse employment action; and (3) a causal connection between the speech and adverse employment action. *See Velez*, 401 F.3d at 95; *LoCurto*, 264 F.3d at 166. Additionally, a public employee's speech is not protected if it is made pursuant to their official duties. "If we determine that [Plaintiff] either did not speak as a citizen or did not speak on a matter of public concern, he has no First Amendment cause of action based on his employer's reaction to the speech." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201 (2d Cir. 2010) (internal quotations and citations omitted).

Clearly, Hubbard's statements were made pursuant to his official duties as an employee of the ACS. Both incidents occurred as a result of phone calls directly related to his employment position, and the content of the speech was likewise focused on his job responsibilities. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Weintraub*, 593 F.3d at 201. Indeed, Plaintiff's own briefing papers explain that the speech was related to Hubbard's "express responsibility to ensure that furniture and household items are delivered in order of preference." Pl.'s Mem. of Law in Opp., at 7. In *Adams*, a teacher's complaint about students' safety and behavior was "quintessentially those of a teacher," and thus pursuant to her employment duties. *See Adams*, 2010 WL 624020, at *24. Similarly, Hubbard's verbal repartee with other ACS employees about the requisition and delivery of materials is "quintessentially" part of his job responsibilities. Since Plaintiff's speech was pursuant to his official duties and did not address a matter of public concern, his First Amendment claim must be dismissed.

### E. Equal Protection

Finally, Plaintiff's equal protection claim has no merit. To allege a violation of equal protection based on selective prosecution by an employer, Plaintiff must allege both that (1) he was treated differently from other similarly situated individuals and (2) the treatment "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004). Alternatively, Hubbard could have shown or tried to show that [he was] treated differently from similarly situated [employees]…and that there was no rational basis for the difference in treatment." *Id.* But that did not happen here. Other than a vague claim that

8

employees in other city agencies do not confront the same hearing process, Plaintiff provides no factual allegations as to how he *personally* was treated differently from other similarly situated individuals, nor does he allege that he is a member of a protected class. That different agencies allegedly follow different procedures is not sufficient on its own to raise an inference of an equal protection violation. Further, as described in detail, *supra*, Plaintiff has raised no adequate claim of a constitutional violation. Finally, there are no facts to support an inference that Defendants maliciously intended to injure Hubbard. As such, Plaintiff's bare bones equal protection claim must also be dismissed.

## II.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is instructed close this case and remove it from my docket.

**SO ORDERED**
May 12, 2010
**New York, New York**

Hon. Harold Baer, Jr.
U.S.D.J.